2001 ME 90

**BRENT LEASING CO., INC.**

v.

**STATE TAX ASSESSOR**

**Docket No. Ken–00–324.**

Supreme Judicial Court of Maine.

Argued Feb. 13, 2001.
Decided June 15, 2001.

Roy T. Pierce, Esq., (orally), Michael L. Sheehan, Esq., Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Portland, for plaintiff.

G. Steven Rowe, Attorney General, Crombie J.D. Garrett, Asst. Attorney General, (orally), Clifford B. Olson, Asst. Attorney General, Augusta, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] Brent Leasing Co., Inc. appeals the judgment of the Superior Court (Kennebec County, *Marden, J.*) affirming a decision of the State Tax Assessor which denied it an exemption from the Maine Sales and Use Tax Law, 36 M.R.S.A. §§ 1751–2113 (1990 & Supp.2000). Brent Leasing argues that its vessel, the *Friendship IV*, is an instrumentality of foreign commerce and exempt from the use tax pursuant to 36 M.R.S.A. § 1760(41) (Supp.2000). We agree that Brent Leasing is not entitled to an exemption, and we affirm that portion of the judgment.[1]

## I. FACTS AND PROCEDURE

[¶ 2] The parties stipulated to the facts. In May 1994, Brent Leasing purchased a vessel called the *Friendship IV* in Massachusetts. It paid no sales or use tax to any state. Within thirty days of the purchase, the *Friendship IV* sailed to Bar Harbor. Brent Leasing used the *Friendship IV* to carry passengers on whale watching and other nature cruises departing from and returning to Bar Harbor, without any intermediate stops. On the majority, if not all, of the cruises, the *Friendship IV* crossed into international waters.

[¶ 3] The Assessor issued an assessment against Brent Leasing for use taxes, interest, and penalties. Brent Leasing filed a timely petition for reconsideration pursuant to 36 M.R.S.A. § 151 (Supp.2000). The Assessor upheld the assessment and added additional interest. Brent Leasing sought review by the Superior Court pursuant to 36 M.R.S.A. § 151 and 5 M.R.S.A. § 11002 (1989). The parties filed cross-motions for summary judgment on the stipulated facts. The Superior Court, in a thorough and well-reasoned decision, granted the Assessor's motion, affirming the decision of the Assessor.

## II. INSTRUMENTALITY OF INTERSTATE OR FOREIGN COMMERCE

[¶ 4] Submission of this matter on summary judgment was appropriate because there are no disputes of material fact. *Estate of DiMillo v. State Tax Assessor*, 1999 ME 154, ¶ 2, 739 A.2d 385, 386. We review de novo the Superior Court's determinations of law. *Fairchild Semiconductor Corp. v. State Tax Assessor*, 1999 ME 170, ¶ 7, 740 A.2d 584, 586.

[¶ 5] Brent Leasing's entitlement to a tax exemption for the *Friendship IV* depends upon whether the vessel is a "watercraft that is placed in use by the purchaser

---

1. Brent Leasing also claims that the Superior Court erred in affirming the Assessor's decision to assess penalties and in affirming the Assessor's calculation of interest. The Assessor has no objection to the waiver of the penalty assessed against Brent Leasing and agrees that interest accrues from July 15, 1994, instead of the date utilized by the Assessor. Because the Assessor agrees with Brent Leasing's position on penalties and interest, the portions of the judgment concerning the penalties and interest will be vacated and remanded for calculation of the correct amount of interest.

as an instrumentality of interstate or foreign commerce." 36 M.R.S.A. § 1760(41).[2] Our task is to determine the meaning that the Maine Legislature intended when it chose these words.

[¶ 6] When we construe a statute, we first look to the plain meaning of the language to determine legislative intent. *Fairchild Semiconductor Corp.*, 1999 ME 170, ¶ 7, 740 A.2d at 587. Only if the language is ambiguous do we resort to extrinsic aids to glean the statutory intent. *Lewiston Raceway, Inc. v. Maine State Harness Racing Comm'n*, 593 A.2d 663, 665 (Me.1991). "In the absence of a legislative definition, the term must be given a meaning consistent with the overall statutory context and must be construed in the light of the subject matter, the purpose of the statute and the consequences of particular interpretation." *Reagan v. Racal Mortgage, Inc.*, 1998 ME 188, ¶ 8, 715 A.2d 925, 928 (citation and quotation omitted). " '[W]e avoid statutory constructions that create absurd, illogical, or inconsistent results.' " *Fairchild Semiconductor Corp.*, 1999 ME 170, ¶ 7, 740 A.2d at 587 (quoting *Darling's v. Ford Motor Co.*, 1998 ME 232, ¶ 5, 719 A.2d 111, 114).

[¶ 7] Brent Leasing contends that the entry of the *Friendship IV* into international waters on the whale watching cruises qualifies it as an instrumentality of foreign commerce. Brent Leasing argues that the phrase "foreign commerce" is a term of art with extensive precedent defining the phrase in the context of the Commerce Clause of the United States Constitution.[3] It contends that because the phrase is a term of art, the Legislature intended "foreign commerce" to carry the same meaning given to it by decisions interpreting the phrase in the Commerce Clause. The Assessor, on the other hand, argues that the Legislature did not intend the phrase to be coextensive with the Commerce Clause.

[¶ 8] Thus, the issue comes down to whether the Legislature intended the Commerce Clause definition of "foreign commerce" to be applicable to section 1760(41) or whether it intended a narrower meaning. If the Maine Legislature intended the phrase to have the same meaning and to be coextensive with the Commerce Clause, then we would likely have to interpret section 1760(41) as granting an exemption to a watercraft carrying passengers onto international waters during its cruises. Precedent from the United States Supreme Court and other courts would dictate this result. When interpreting "foreign commerce" as it is used in the Commerce Clause, the

---

**2.** 36 M.R.S.A. § 1760 (Supp.2000) provides in relevant part:

Subject to the provisions of section 1760–D, no tax on sales, storage or use may be collected upon or in connection with:

. . . .

41. Certain instrumentalities of interstate or foreign commerce. The sale of a ... watercraft that is placed in use by the purchaser as an instrumentality of interstate or foreign commerce within 30 days after that sale and that is used by the purchaser not less than 80% of the time for the next 2 years as an instrumentality of interstate or foreign commerce.... For purposes of this subsection, property is "placed in use

as an instrumentality of interstate or foreign commerce" by its carrying of, or providing the motive power for the carrying of, a bona fide payload in interstate or foreign commerce.... For purposes of this subsection, "bona fide payload" means a cargo of persons or property transported by a contract or common carrier for compensation that exceeds the direct cost of carrying that cargo....

**3.** The Commerce Clause gives Congress the power: "To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. CONST. art. 1, § 8, cl. 3.

Supreme Court has included within the meaning of that phrase a ship that carries passengers between ports in the same state but enters into international waters on its route. *See Lord v. S.S. Co.,* 102 U.S. 541, 544, 26 L.Ed. 224 (1880) (declaring that ships sailing from San Francisco to San Diego without making any stops are engaged in foreign commerce while in international waters within the meaning of the Commerce Clause).[4] Because the Maine Legislature is obviously aware of Supreme Court precedent, if it intended "foreign commerce" to carry the same meaning that it has in the Commerce Clause, that meaning would include vessels carrying passengers from Bar Harbor, crossing into international waters and returning to Bar Harbor. However, if the Legislature intended that the phrase "foreign commerce" not be read as broadly as it is read when used in the Commerce Clause, Brent Leasing may not be entitled to the tax exemption.

[¶ 9] The Supreme Court has recently reminded us that when Congress uses the phrase "interstate or foreign commerce" in a statute, it does not necessarily carry the same meaning as in the Commerce Clause. In *Circuit City Stores, Inc. v. Adams,* —— U.S. ——, 121 S.Ct. 1302, 1309, 149 L.Ed.2d 234 (2001), the Court held that the phrase "workers engaged in foreign or interstate commerce," as used in the Federal Arbitration Act, was not intended by Congress to be coextensive with the Commerce Clause.[5]

[¶ 10] Just as the Supreme Court does not assume that Congress always uses the phrase "interstate or foreign commerce" to be coextensive with the Commerce Clause, we should not assume that the Maine Legislature uses the phrase coextensively with the Commerce Clause. Indeed, an examination of the purpose of the use tax causes us to conclude that the Legislature intended "foreign commerce" in section 1760(41) to carry a narrower meaning than the meaning in the Commerce Clause.

[¶ 11] "The purpose of the use tax is to minimize unfair competition between intrastate and interstate sales of tangible personal property." *Harold MacQuinn, Inc. v. Halperin,* 415 A.2d 818, 821 (Me. 1980).

> The necessity of a use tax is obvious. It is well known that much personal property is purchased outside the borders of the state and brought into the state for use here. This State is without authority to tax sales beyond its territorial limits. Without some tax to complement and supplement the sales tax, not only would a tax advantage be enjoyed by the buyer who purchases outside of the state and uses that property here, but also local merchants would be at a disadvantage against competition by out of state merchants who may be able to offer

**4.** *See also Cent. Greyhound Lines, Inc. v. Mealey,* 334 U.S. 653, 655–56, 68 S.Ct. 1260, 92 L.Ed. 1633 (1948) (holding that a bus going to and from points in the same state but crossing into another state during the journey is engaged in interstate commerce within the meaning of the Commerce Clause). The Missouri Supreme Court has likewise held that the transportation of passengers by boat on a boundary river in a continuous nonstop journey from and to the same point in Missouri during which the boat crosses into the waters of Illinois is interstate commerce. *City of St. Louis v. Streckfus,* 505 S.W.2d 70, 73–74 (Mo. 1974).

**5.** The Court stated that Congress' use of the phrases "affecting commerce" or "involving commerce" evidences its intent "to regulate to the outer limits of its authority under the Commerce Clause," but the phrases, "engaged in commerce" or "used in commerce," have a more limited meaning. *Circuit City,* —— U.S. ——, 121 S.Ct. at 1309, 149 L.Ed.2d 234.

lower prices by reason of lower tax burdens. A typical illustration is the purchase of an automobile in a non-taxable state by a citizen of this state for use here. A Maine dealer is obliged to collect a sizeable tax on such a transaction when made in this state. Without a use tax the aggregate purchases of this character would result in a severe tax loss to the State, and present a serious handicap to Maine dealers.

*Hanbro, Inc. v. Johnson,* 158 Me. 180, 184, 181 A.2d 249, 251 (1962).

[¶ 12] Because of the purpose of the use tax, it is apparent that the Legislature intended that any exemptions from the tax be limited to those otherwise required by the federal constitution or other laws or those demanded by public policy concerns. Extending the exemption beyond that required by public policy, other statutes, or the federal constitution does not advance the purpose of the use tax.

[¶ 13] The Legislature is aware that the Commerce Clause restricts a state's ability to tax instrumentalities of interstate and foreign commerce, but it is also aware that states are not prohibited from taxing instrumentalities of interstate and foreign commerce so long as the tax meets the requirements established by the Supreme Court.[6] Brent Leasing has not challenged the imposition of the use tax on constitutional grounds, and it concedes that taxing the *Friendship IV* does not violate the Commerce Clause.

[¶ 14] Because the Legislature was aware of the constitutional limitation, it enacted the section 1760(41) exemption to meet that limitation. It is highly doubtful, given the purpose of the use tax, that the Maine Legislature intended to exempt more instrumentalities placed in foreign commerce than the federal constitution requires. It has not been suggested to us that the Legislature had any other public policy or rationale in mind for which it intended to expand the foreign commerce exemption beyond the confines of the constitutional restraint. There is no legislative history indicating such public policy or rationale for which the Legislature may have intended an expansive reading of the phrase "foreign commerce." Thus, we construe the section 1760(41) exemption to apply to vessels only when the Commerce Clause requires an exemption from the use tax. Because the Commerce Clause does not mandate an exemption to the *Friendship IV*, as Brent Leasing concedes, we conclude that section 1760(41) does not grant an exemption to it.

[¶ 15] Furthermore, we have said on several occasions that tax exemptions are construed narrowly. *Silverman v. Town of Alton,* 451 A.2d 103, 105 (Me.1982) (stating that uncertainty as to the meaning of the exemption requires resolving the uncertainty against the exemption); *Harold MacQuinn,* 415 A.2d at 820 (stating that exemptions are entitled to reasonable interpretation but not extended to situations not clearly coming within their purposes); *SST & S. Inc. v. State Tax Assessor,* 675 A.2d 518, 521 (Me.1996) (stating that taxation is the rule and exemption is the excep-

---

**6.** A tax on instrumentalities of interstate commerce must meet four requirements: (1) it can only be applied to an activity with a substantial nexus with the taxing state; (2) it must be fairly apportioned; (3) it cannot discriminate against interstate commerce; and (4) it must be fairly related to the services provided by the state. *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 279, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). A tax on foreign commerce must meet the requirements of taxation on interstate commerce, plus two additional requirements: (1) it cannot create a risk of multiple taxation, or (2) impair federal uniformity. *Japan Line Ltd. v. County of Los Angeles,* 441 U.S. 434, 451, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979).

tion). Because it is not apparent that the Legislature intended to broaden the scope of the exemption beyond what it was constitutionally required to exempt, we conclude that it intended the narrower reading.

[¶ 16] Finally, our construction of section 1760(41) is buttressed by a construction of the statute made contemporaneously with its enactment in an interpretive rule promulgated by the Maine Revenue Service. Rule 318.02 states: "Personal property is not 'used as an instrumentality of interstate or foreign commerce' when carrying only cargo which both originates and terminates within the State of Maine."[7]

[¶ 17] Because we conclude that the Legislature intended only to exempt instrumentalities utilized in foreign commerce when the Commerce Clause would require exemption from taxation and because Brent Leasing has conceded that the Commerce Clause does not require its exemption from taxation, we hold that Brent Leasing is responsible for payment of the use tax on the *Friendship IV*.

The entry is:

Judgment vacated as to interest and penalties. Remanded to Superior Court for recalculation of interest. Judgment affirmed in all other respects.

DANA, J., with whom CLIFFORD, J., joins, dissenting.

[¶ 18] I respectfully dissent.

[¶ 19] I agree that we should give the words "instrumentality of interstate or foreign commerce" the meaning that the Legislature intended. Because a ship taking passengers from Maine waters into international waters and back is engaged in "foreign commerce"; *see Lord v. S.S. Co.,* 102 U.S. 541, 544, 26 L.Ed. 224 (1880); *Bob–Lo Excursion Co. v. Michigan,* 333 U.S. 28, 34–35, 68 S.Ct. 358, 92 L.Ed. 455 (1948); the vessel is unquestionably an "instrumentality of . . . foreign commerce." The Court reasons that because the Legislature may constitutionally impose a use tax on such a vessel, 36 M.R.S.A. § 1760 does not exempt the *Friendship IV* from taxation. This is a non sequitur. That a use tax would be permitted by the United States Constitution does not mean that the Legislature imposed such a tax. It is evident from the plain language used that the Legislature wanted to stay well clear of the taxation of the "instrumentalit[ies] of" interstate and foreign commerce."

[¶ 20] The Maine Revenue Service's effort to limit the exemption is understandable. The Legislature, however, did not qualify the exemption articulated in section 1760, and it is neither the Service's function nor our function to craft such a qualification.

---

7. The Attorney General's office represents that this rule was promulgated eight days after the 1980 effective date of section 1760(41).