STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-04-04

GARY QUINTAL,

    Petitioner

v.

**DECISION AND ORDER**

MAINE STATE RETIREMENT
SYSTEM,

    Respondent

DONALD L.

SEP ₁ 5 2004

    This matter is before the court on petition by petitioner for review under M.R. Civ. P. 80C of a December 22, 2003 Decision of the Board of Trustees of the Maine State Retirement System.

    This case concerns termination of disability retirement benefits and the definition of "employed" and the "substantial gainful activity amount" ("SGA") under the Maine State Retirement System ("MSRS"). Petitioner is seeking reversal of a decision by MSRS denying disability retirement benefits from June 17, 2003 to January 2, 2003. Petitioner also seeks costs and attorney fees. Petitioner, as a result of a back injury sustained while employed by the Maine Department of Transportation was found to be disabled and granted disability retirement benefits by the MSRS in July of 1986. In October of 1991, the MSRS recommended petitioner as a candidate for rehabilitation. In June of 1997 the petitioner stipulated that he was no longer disabled. Pursuant to 5 M.R.S.A. § 17929(2)(B)(1) petitioner was required to "actively seek work."

    On June 17, 2002, petitioner was scheduled to begin full time employment with the City of Hallowell as a code enforcement officer and building inspector earning $27,748.00 annually. On June 20, 2002, petitioner's disability retirement benefits were

discontinued via a decision by the Executive Director of MSRS. Petitioner informed the Director he was appealing this decision in a letter dated June 22, 2002. A subsequent hearing denied benefits pending appeal on the discontinuance issue and there were hearings on petitioner's appeal in April and May of 2003.

A final decision on petitioner's appeal, dated December 22, 2003, was issues by the MSRS Board of Trustees affirming the June 20, 2002 decision of the Executive Director denying benefits. Petitioner filed a petition with this court on January 26, 2004, seeking review pursuant to M. R. Civ. P. 80C.

When the decision of an administrative agency is appealed pursuant to M.R. Civ. P. 80C, this Court reviews the agency's decision directly for abuse of discretion, errors of law, or findings not supported by the evidence. *Centamore v. Dep't of Human Services*, 664 A.2d 369, 370 (Me. 1995). "An administrative decision will be sustained if, on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." *Seider v. Board of Exam'r of Psychologists*, 2000 ME 206 ¶ 9, 762 A.2d 551, 555 (Me. 2000) (citing *CWCO, Inc. v. Superintendent of Ins.*, 1997 ME 226, ¶ 6, 703 A.2d 1258, 1261 (Me. 1997)). In reviewing the decisions of an administrative agency, the Court should "not attempt to second-guess the agency on matters falling within its realm of expertise" and the Court's review is limited to "determining whether the agency's conclusions are unreasonable, unjust or unlawful in light of the record." *Imagineering v. Superintendent of Ins.*, 593 A.2d 1050, 1053 (Me. 1991). The focus on appeal is not whether the Court would have reached the same conclusion as the agency, but whether the record contains competent and substantial evidence that supports the result reached by the agency. *CWCO, Inc.*, 1997 ME 226, 703 A.2d 1258, 1261. "Inconsistent evidence will not render an agency decision unsupported." *Seider*, 762 A.2d 551 (citations omitted). The burden of proof rests with the party seeking to

overturn the agency's decision, and that party must prove that no competent evidence supports the Board's decision. *Id.* "[Petitioner] must prove that no competent evidence supports the Board's decision and that the record compels a contrary conclusion." *Bischoff v. Board of Trustees,* 661 A.2d 167, 170 (Me. 1995).

Factual determinations must be sustained unless shown to be clearly erroneous. *Imagineering,* 593 A.2d at 1053 (noting that the Court recognizes no distinction between the clearly erroneous and substantial evidence in the record standards of review for factual determinations made by administrative agencies). "A party seeking review of an agency's findings must prove they are unsupported by *any* competent evidence." *Maine Bankers Ass'n v. Bureau,* 684 A.2d 1304, 1306 (Me. 1996) (emphasis added).

"When the dispute involves an agency's interpretation of a statute administered by it, the agency's interpretation, although not conclusive on the Court, is accorded great deference and will be upheld unless the statute plainly compels a contrary result." *Maine Bankers Ass'n,* 684 A.2d at 1306 (citing *Centamore v. Department of Human Services,* 664 A.2d 369, 370 (Me. 1995)).

Petitioner is arguing that his disability benefits[1] should not have been discontinued as of June 17, 2002, for two basic reasons. First, petitioner asserts, his employment with the City of Hallowell was probationary and hence he was in a type of apprenticeship situation[2] and that he continued to seek work and that therefore his benefits should not have been discontinued. Second, petitioner argues that the calculation of his earnings by the MSRS was incorrect in that they calculated what he would earn in a year and compared it to the amount (the "SGA" explained below) he

---

[1] According to petitioner's "actively seeking work" file his "current yearly benefit' was $18,476.16.

[2] Petitioner also asserts that he continued to actively seek employment during his tenure with the City of Hallowell.

would need to exceed annually under MSRS regulations to have his benefits terminated.[3]

Some background on how the "substantial gainful activity" ("SGA") number is determined is appropriate at this point. The relevant statute states:

> 1) After the disability has continued for 2 years, the disability must render the person unable to engage in any substantially gainful activity that is consistent with the person's training, education or experience and average final compensation adjusted by the same percentage adjustment as has been received under section 17806. The disability retirement benefit continues if the person can effectively demonstrate to the executive director that the person is actively seeking work.

5 M.R.S.A. § 17929((2)(B)(1).

The Code of Maine Regulations defines "substantial gainful activity" for the purposes of the above statute as "tasks or efforts that are or could be performed in such a manner as to generate remuneration in an amount which is consistent with average final compensation." CMR 94-411-507. Further on, the same regulation defines "consistent with average final compensation" as "an amount that, on an annual basis, is at least 80% of the person's average final compensation." Petitioner's SGA number, determined by multiplying his final average inflation adjusted compensation before his injury of $30,637 by 80% is $24,637 according to the December 22, 2003 Decision of the MSRS Board.[4]

Addressing petitioner's second major argument first, petitioner asserts that comparisons of earning for SGA must be done for a calendar year. In brief, petitioner is arguing that since he did not begin work until June 17 of 2002, his earnings for that year (effectively half a year's earnings) only amounted to $14,421,14. Therefore, petitioner argues, he did not exceed his SGA amount for 2002 or a lesser earnings limit of $20,000

---

[3] Petitioner also argues that in any case his disability benefits should have continued until July 1, 2002, because his service retirement benefits did not begin until then and he was left with a gap. This gap, however, was self-created, as he did not request that his service retirement benefits begin until August 1, 2002.

[4] This number appears incorrect by $127.40. 80% of $30,637.00 is $24,509.60.

applicable to all beneficiaries under a related statute governing reduction in amount of benefits. *See,* 5 M.R.S.A. § 17930. Petitioner asserts that since section 17930 anticipates looking back over the entire previous year to see if the $20,000 amount has been exceeded, section 17929 should be read the same way.

Petitioner also points to 5 M.R.S.A. § 17909, which directs that, "[t]he executive director shall require each beneficiary of a disability retirement benefit to submit, each calendar year, a statement of his compensation received from engaging in any gainful occupation during that year." Petitioner is arguing that section 17929, dealing with cessation of a disability retirement benefits, section 17930, dealing with reduction of benefits and section 17909, mandating an annual statement of compensation by disability retirement beneficiaries should be read *in pari materia* as establishing a retrospective review and regulation system.

Respondent replies to petitioner's argument by asserting that petitioner is ignoring the plain meaning of the word "annual" as applied to salary and advocates that the court see the relevant statutes and regulations as taking an immediate and a prospective view of compensation when a beneficiary becomes employed. Respondent distinguishes section 17909(1) as related to a distinct event, that is, "each calendar year" as meaning once a year. Respondent distinguishes section 17930 as applying only to still disabled individuals and notes that the SGA number is not a factor in this statute. Respondent directs the court's attention to the relevant regulation, which states that the SGA is calculated "on an annual basis." CMR 94-411-507(1)(A)(1). Respondent notes that the City of Hallowell indicated that petitioner's pay would be "$27,748 annually."[5]

Respondent cites an Internet dictionary definition of "annual" as "covering a year." The definition of "annual" contained in a standard dictionary consulted by the

---

[5] In fact, the same letter stated that petitioner's salary would increase to $28,445 annually after six months.

court is "1. Recurring, done, or performed every year:YEARLY; 2. Determined by a year's time." WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY, 110 (Riverside Publishing 1988). None of these definitions directly address the question at hand dispositively. Common sense, the plain meaning of the statute and the standard of review under which this court reviews agency action are, however, of great assistance.

In determining the plain meaning of a statute we are guided by a recent Law Court decision stating, "[w]hen we construe a statute, we first look to the plain meaning of the language to determine legislative intent." *Brent Leasing Co., v. State Tax Assessor,* 2001 ME 90, 773 A.2d 457, 459. "When interpreting statutes, [the Court seeks to discern from the plain language the real purpose of the legislation, avoiding results that are absurd, inconsistent, unreasonable, or illogical." *Wood v. Supt. of Insurance,* 638 A.2d 67, 70 (citations omitted).

To find petitioner's definition in the legislature's intent we would have to assume that the common understanding of an annual salary as a unit of measurement did not prevail in the legislature. We would also have to disregard the standard of review provided by the Law Court in exactly this sort of situation: "When the dispute involves an agency's interpretation of a statute administered by it, the agency's interpretation, although not conclusive on the Court, is accorded great deference and will be upheld unless the statute plainly compels a contrary result." *Maine Bankers Ass'n,* 684 A.2d at 1306 (citing *Centamore v. Department of Human Services,* 664 A.2d 369, 370 (Me. 1995)).

This court understands, as we are sure the legislature does, that someone who is paid $500.00 a week has a $26,000 annual salary whether it is viewed from January 1st or July 1st or December 31st.

Addressing petitioner's other principal argument, namely that the probationary nature of his employment meant that he was not truly employed in a legal sense and was

The entry will be:

    The decision of the State of Maine Retirement System Board of Trustees  Appeal No. 027-02 dated  December 22, 2003, in the matter of Gary Quintal is AFFIRMED.

Dated:  August 1 9, 2004

Donald H. Marden
Justice, Superior Court

Date Filed __1/26/04__ __Kennebec__ Docket No. __AP04-04__
County

Action __Petition for Review__
80C

J  ARDEN

Gary Quintal    vs.    Maine State Retirement System

Plaintiff's Attorney

Patricia McDonough Dunn, Esq.
Ten Free Street
P.O. Box 4510
PORTLAND MAINE  04112

Defendant's Attorney

James M. Bowie, AAG
6 State House Station
Augusta, Maine  04333-0006

| Date of Entry | |
|---|---|
| 1/26/04 | Petition for Review of Fianl Agency Action, filed. s/Dunn, Esq. |
| 2/2/04 | Letter entering appearance, field. s/Bowie, AAG |
| 2/9/04 | Affidavit of Service, filed. s/Dunn. Esq. |
| 2/27/04 | Certified Record, filed.  (Table of contents attached) **IN VAULT DRAWER** |
| **3/3/04** | NOTICE OF BRIEFING SCHEDULE MAILED TO ATTYS. |
| 3/11/04 | Minutes of the Board of Trustees, Maine State Retirement, filed. s/Bowie, |
| 3/19/04 | Motion for Enlargment of Time to File Brief, filed. s/Dunn, Esq. Certificate of Service, filed. s/Dunn, Esq. |
| 3/25/04 | MOTION FOR ENLARGEMENT OF TIME, Marden, J. (dated 3/22/04) Without objection motion GRANTED; enlarged to May 7, 2004. Copies mailed to attys of record. |
| 5/7/04 | Brief of Petitioner Gary Quintal, filed.  s/P. Dunn, Esq. |
| ------- | Notification of Discovery Service, filed. s/Webber, Esq. Plaintiff's First Request for Production of Documents served on Edward Benjamin, Jr., Esq. on 5/5/04. |
| 5/17/04 | Letter, filed. s/Bowie, AAG |
| 6/1/04 | Respondent's Memorandum of Law in Opposition to the Petition for Review, filed.  s/J. Bowie, AAG |
| 6/2/04 | Notice of setting of hearing on oral arguments on 7/1/04 at 9:00am sent to attys of record. |
| 6/10/04 | Reply Brief of Petitioner Gary Quintal, filed. s/Dunn, Esq. |