STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-02-58

IRVING PULP & PAPER LTD,

Petitioner

v.

MAINE REVENUE SERVICES,

Appellant

**DECISION AND ORDER**

SEP

This matter is before the court on petition for review pursuant to 36 M.R.S.A. § 151, 5 M.R.S.A. § 11002 and M.R. Civ. P. 80C. This case concerns the formula used to determine the corporate tax assessed against petitioner Irving Pulp & Paper LTD ("IPP") for the tax years 1995 through 1999. The issue is whether, in computing tax assessment under the appropriate formula, sales, property and payroll figures from petitioner IPP's worldwide operations or continental United States operations should be employed. The meaning of the words "all" and "everywhere" as used in the Uniform Division of Income for Tax Purposes Act (UDITPA), 36 M.R.S.A. §§ 5210 – 5211, and its effect on the construction of a fraction used to calculate corporate tax under section 5211 of the Act is central to the dispute before this court. At stake is $589,544.02 in taxes paid for years 1995 through 1997 plus the difference in assessment that would result from retroactively applying the formula supported by Maine Revenue Service versus the formula proposed by IPP for the years 1998 and 1999.

Pursuant to 36 M.R.S.A. § 5211, petitioner, a Canadian corporation operated as a branch of K.C. Irving Limited, calculated and paid corporate income tax for the years 1995 through 1999 using only Maine property, sales and payroll figures in constructing the denominator of a fraction used pursuant to section 5211 to apportion its income

from Maine for tax purposes. This formula for constructing the relevant denominator will be called the Maine Revenue Service formula ("MRS formula"). In September of 1999, IPP filed an amended corporate income tax return applying a formula (described below) that applied worldwide property, payroll and sales figures instead of solely United States figures ("IPP formula") seeking refunds for the tax years 1995 through 1997. In February of 2000, respondent issued a refund based on the amended returns that applied the IPP formula for years 1995, 1996 and 1997 of $589,544.02, including interest. IPP filed its Maine corporate taxes for the years 1998 and 1998 using the IPP formula.

In early 2001, respondent audited all of petitioner's returns from 1995 through 1999 (including the 1995 through 1997 returns providing the refund) and as a result disallowed IPP's inclusion of its worldwide sales, payroll, and property amounts in the denominator constructed pursuant to the property, payroll and sales factors in section 5211(9), (12) and (14) respectively. In essence, the respondent Maine Revenue Service decided that the IPP formula was incorrect and the MRS formula should be applied. As a result of this decision, respondent assessed petitioner $1,049,562.18 of tax and interest (this included the amount previously refunded in February of 2000) for tax years 1995 through 1999. IPP paid the million dollar plus assessment. This payment stopped further accrual of interest against IPP.

On August 17, 2001, IPP timely filed a request pursuant to 36 M.R.S.A. § 151 for reconsideration of the assessment. On July 25, 2002, respondent issued a decision letter upholding the assessment for the years 1995 through 1999 in full (essentially applying the MRS formula) and rebating what respondent determined was an overpayment of interest of $222,810.61 and the credit interest that had accrued, $19,293.82, for a total rebate of $242,104.43. Subtracting the $222,810.61 abatement from the $1,049,562.18

assessment and interest paid by IPP leaves $826,751.57, the amount apparently at issue in this case.

A petition for review of the July 25, 2002 decision of the Director of the MRS Appellate Division was timely filed pursuant to 5 M.R.S.A. § 11002.

Title 36 M.R.S.A. § 151 instructs:

> The Superior Court shall conduct a de novo hearing and make a de novo determination of the merits of the case. Either the taxpayer or the assessor may raise on appeal in Superior Court any facts, arguments or issues that relate to the assessor's decision on reconsideration, regardless of whether the facts, arguments or issues were raised during the reconsideration proceeding being appealed, provided that the facts, arguments or issues are not barred by any other provision of law. The court shall make its own determination as to all questions of fact or law, regardless of whether the questions of fact or law were raised during the reconsideration proceeding. The Superior Court shall enter such orders and decrees as the case may require. The burden of proof is on the taxpayer.

36 M.R.S.A. § 151 (in relevant part).

In reviewing a decision of the State Tax Assessor under section 151, the Superior Court does not serve in an appellate capacity. *Enerquin Air v. State Tax Assessor*, 670 A.2d 926, 928 (Me. 1996). "Rather, the court functions as the forum of origin for a determination of both facts and law." If, as is the case here, the matter is submitted for final resolution upon an agreed statement of facts, "[t]he justice to whom a case is submitted upon an agreed statement cannot properly add or subtract from the facts thus agreed upon but must apply the applicable law to that which is presented to him." *Meral Corp. v. State Tax Assessor*, 482 A.2d 1258, 1260 (Me. 1984) quoting, *Public Finance Corp. v. Scribner*, 159 Me. 152, 189 A.2d 368, 368-69 (1963).

The Maine version of the Uniform Division of Income for Tax Purposes Act, 36 M.R.S.A. §§ 5210 – 5211, creates a formula determining the amount of a corporation's net income[1] that is to be subject to taxation in Maine.

> All income shall be apportioned to this State by multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus twice the sales factor, and the denominator of which is 4.

36 M.R.S.A. § 5211(8). The creation of the numerator of the formula for apportionment depends on the creation of other fractions called "factors" – one each for property, payroll and sales (this factor is doubled). *See* section 5211(9), (12) and (14). The denominator is the number 4.

In creating the property factor "the average value of the taxpayer's real and tangible property owned or rented or used in this state," section 5211(9), is made the numerator and "*all* the taxpayer's real and tangible personal property owned or rented and used during the tax period," (emphasis supplied) *id.* is the denominator. Creation of the payroll factor, *id.* at (12) is accomplished by taking the "total amount paid in this State during the tax period by the taxpayer for compensation" as the numerator and "the total compensation paid *everywhere* during the tax period," (emphasis supplied) as the denominator. *Id.* The sales factor is created similar to the payroll factor in that the numerator of the fraction "is the total sales of the taxpayer in this State during the tax year" and the denominator "is the total sales of the taxpayer *everywhere* during the tax period." (Emphasis supplied). *Id.* at (14).

The statute describes a formula that might look like this:

> All Maine property / All property + Maine compensation / Compensation everywhere + <u>(Maine sales / sales everywhere) X 2</u>
> 4

---

[1] The parties agree that IPP properly relies on the figures reported in Form 1120F of its U.S. federal income tax for each of the years at issue to begin calculation of net income.

Neither party disputes the mathematics of this formula and they are in agreement concerning the valuation of IPP's Maine property, compensation and sales in the numerators used in creation of the property, compensation and sales factors. What they disagree about is the creation of the denominators in each factor. Simply, respondent restricts the definition of "all property" to all property within the geographic United States. Likewise, respondent restricts "everywhere" in the compensation (payroll) factor and the sales factor to payroll and sales within the geographic United States. This is the MRS formula.

Petitioner avers that "all" means all property it owns worldwide and "everywhere" should be construed to refer to all compensation it pays anywhere on earth and all sales worldwide. This would be the IPP formula.

The determinative issue, the meaning of the words "all" and "everywhere" in the statute, is portrayed by both parties as a simple matter of looking to the plain and ordinary meaning of the words in the statute. In their briefs on this issue both parties cite first to the same 2001 Law Court case. *Brent Leasing Co., v. State Tax Assessor*, 2001 ME 90, 773 A.2d 457. The Law court cites, *Fairchild Semiconductor Corp.*, 1999 ME 170, P7, 740 A.2d at 587, for the proposition that "[w]hen we construe a statute, we first look to the plain meaning of the language to determine legislative intent." *Brent*, 2001 ME 90, ¶ 6, 773 at 459.

Petitioner goes on to cite the *Brent* court for the proposition that only if the language is ambiguous does a court resort to extrinsic aids to glean statutory intent. Citing *Lewiston Raceway, Inc. v. Maine State Harness Racing Comm'n*, 593 A.2d 663, 665 (Me. 1991). Noting that "everywhere" is not separately defined in the relevant statues petitioner offers a standard dictionary definition ("in every place; in every part."). For

the term "all" petitioner offers the definition from a standard law dictionary; "the whole of . . . every member of individual component of . . ." Citing BLACK'S LAW DICTIONARY (6ᵗʰ ed. 1990).

Petitioner IPP contends that the proper interpretation of the words "all" and "everywhere" would allow it to include its worldwide property, payroll and sales figures in the denominators of its Maine apportionment factors. Petitioner avers that this interpretation of the statute is consistent with the legislative intent to tax only that income derived from the corporation's activities within Maine.

Petitioner next asserts that the relevant statutes do not contain language which would require a foreign corporation to use only its Maine sales, property and payroll when apportioning its income. Turning to the regulations, petitioner cites provisions of "Rule 801"[2] as containing no limitation on foreign corporations restricting them to using only their domestic U.S. income in apportionment. Petitioner cites the definition of a "state" in the regulations as" any state of the United States, the District of Columbia . . . and any foreign country or a political subdivision thereof," CMR 18-125-801.01(E), and maintains that "a corporation's foreign (non-U.S.) operations are relevant in determining whether the corporation is entitled to apportion its income." Petitioner notes that according to the regulation, "[a] taxpayer is taxable in another state if" CMR 18-125-04(A); "the other state has jurisdiction to subject the taxpayer to a net income tax, regardless of whether or not the state actually imposes such a tax on the taxpayer." *Id.* at .04(A)(2).

---

[2]CMR 18-125-801 states in its summary:

> The purpose of this rule is to explain the apportionment of income of corporations as required by 36 M.R.S.A. § 5102(8). The rule also explains the calculation of an apportionment percentage by other taxpayers when such taxpayers are required to use the income apportionment method set out in 36 M.R.S.A., Chapter 821, §§ 5210-11.

Petitioner goes on to point out that the language in the regulations describing application of the "factors" in the statute (36 M.R.S.A. § 5211) tracks the language of the statutes and "clearly contemplates" inclusion of non U.S. payroll, citing language on calculating the value of non-U.S. payroll:

> In the case of employees not subject to the Internal Revenue Code, e.g., those employed in foreign countries, the determination of whether such benefits or services would constitute income to the employees is made as though such employees were subject to the Internal Revenue Code.

*Id.* at .07(C).

Petitioner also notes again that use of "all" in the property factor, *Id.* at .06, and the use of "everywhere" in the sales factor. *Id.* at .08. Petitioner also cites the definition of "gross receipts" in support of its argument that non-U.S. sales are contemplated:

> "Gross receipts" means the gross amounts realized (the sum of money and the fair market value of other property or services received) on the sale or exchange of property, the performance of services, or the use of property or capital (including rents, fees, royalties, interest and dividends) in a transaction that produces income, in which the income or loss is recognized (or would be recognized if the transaction were in the United States) under the Internal Revenue Code.

*Id.* at .08(B).

Respondent begins its argument by restating the fact that IPP, a Canadian corporation, earned its income in the U.S. by selling timber reserves and the millions of dollars it earned, all in Maine, in the years in question, were its only U.S. income. During those years IPP had no other property in the U.S. and made not other sales in the U.S. and had no payroll whatsoever in Maine or the rest of the U.S.[3]

Respondent argues that the Assessor properly construed "all" and "everywhere" as referring to areas within the United States geographic boundaries and that the

---

[3] Under Respondent's reading of section 5211 the last sentence of section 5211(1), "[a]ny taxpayer having income solely from business activity taxable within this State shall apportion his entire net income to this state," should be dispositive. This is exactly what IPP had done in the years 1995 through 1997 before filing for a rebate.

Assessors construction is consistent with the purpose of Maine's version of UDITPA as explained by the Law Court in *Great Northern Nekoosa Corp. v. State Tax Assessor*, 675 A.2d 963 (Me. 1996) and the operation of the "water's edge" apportionment in Maine as described in *E.I. DuPont de Nemours & Co. v. State Tax Assessor*, 675 A.2d 82, 83 (Me. 1996) ("Under this method of reporting and apportionment the state does not look beyond the water's edge -- that is, beyond the geographic boundaries of the United States -- in determining what activities are appropriately considered part of the unitary business.").

According to respondent, the theory behind Maine's UDITPA is "if every state adopted UDITPA and applied its apportionment scheme, gaps and overlaps would be eliminated and a multistate corporation would, in the aggregate, pay taxes on no more and no less than 100 percent of its income.' *Great Northern Nekoosa Corp*, 675 A.2d at 964.

Respondent argues that in construing the statute to allow IPP to use worldwide sales, payroll, etc. it would construe the statute in a way that creates an absurd, illogical or inconsistent result. Citing *Brent Leasing*, 2001 ME 90, ¶ 6, 773 A.2d at 459. Since the preapportionment tax base that all parties rely on, pursuant to 36 M.R.S.A. § 5102(8) is U.S. federal taxable income it is absurd, illogical, etc. to use IPP's worldwide figures resulting in apportionment of less than one percent of its adjusted federal taxable income being apportioned to Maine when all of its U.S. income came from this State.

In short, respondent argues that Maine is a "water's edge" not a "worldwide" jurisdiction. See *E.I. Du Pont de Nemours & Co.*, 675 Q.2d at 83 n.3 (The water's edge reporting method differs from the worldwide combined reporting method . . . under a worldwide combined reporting method the state aggregates the income of all corporate entities composing the unitary business including both domestic affiliates and those

operating abroad.). Citing *Barclays Bank v. Franchise Tax Bd.*, 114 S. Ct. 2268, 2273, 129 L.Ed. 2d 244, 254 (1994).

Respondent is correct that petitioner's interpretation of the statute will yield Maine an "absurdly miniscule fraction of IPP's business activity in Maine." That such a result means that petitioner's arguments from the statues and the rules create an absurd, illogical or inconsistent result is less obviously correct.

In the final analysis, the decision in this case is mandated by the rules of statutory interpretation in the application of the United States Internal Revenue Code to the UDITPA. Contrary to respondent's arguments, the plain language of the statute in question is unambiguous and unequivocal. "All" and "everywhere" are not ambiguous words. But under Maine rules of statutory construction, looking at the plain language of the statute does not end the analysis because the terms in all statutes must be "given a meaning consistent with the overall statutory context and must be construed in the light of the subject matter, the purpose of the statute and the consequences of particular interpretation." *Brent Leasing v. State Tax Assessor*, 773 A.2d at 459. Keeping in mind that the philosophy of the law of corporate taxation of a foreign corporation doing business in this state is to employ an analytical means to reach an equitable basis for the determination of that portion of the income attributable to activities within the State of Maine and consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

To begin that analysis, the court has to go back to the starting point for consideration by the State of Maine in taxing foreign corporations. That is to determine what is the income to be taxed.

> "Maine net income" means, for any taxable year for any corporate taxpayer, the taxable income of that taxpayer for that taxable year under the laws of the United States as modified by section 5200-A and

apportionable to this State under chapter 821. To the extent that it derives from a unitary business carried on by two or more members of an affiliated group, the Maine net income of a corporation is determined by apportioning that part of the federal taxable income of the entire group that derives from the unitary business.

36 M.R.S.A. § 5201(8).

The operative words from this definition are "federal taxable income" under the United States Internal Revenue Code, Title 26 U.S.C.S. § 63(a) (2004).

> Except as provided in subsection (b), for purposes of this subtitle, the term 'taxable income' means gross income minus the deductions allowed by this chapter (other than the standard deduction).

In accordance with 26 U.S.C.S. § 882(a)(1):

> A foreign corporation engaged in trade or business within the United States during the taxable year shall be taxable . . . on its taxable income which is effectively connected with the conduct of a trade or business within the United States.

26 U.S.C.S. § 882(a)(2):

> In determining taxable income for purposes of paragraph (1), gross income includes only gross income which is effectively connected with the conduct of a trade or business within the United States.

26 U.S.C.S. § 882(b):

> In the case of a foreign corporation, except where the context clearly indicates otherwise, gross income includes only – (1) gross income which is derived from sources within the United States and which is not effectively connected with the conduct of a trade or business within the United States, and (2) gross income which is effectively connected with the conduct of a trade or business within the United States.

Therefore, under Maine tax law, foreign corporation income utilized in the apportionment formula can only be that income derived within the United States. To apply non-U.S. property, payroll or sales against U.S. income would be akin to applying an apportionment formula based only on U.S. property, payroll or sales against world-wide income, an illogical result and totally inconsistent with the principle that the Uniform Act is designed to assure the foreign corporation does not become double

taxed or go tax free in a situation where it has a nexus to a state with corporate income taxing authority. To accept the IPP formula would require the court to expect the formula to be used against petitioner's worldwide income. Whatever its constitutional implications, it would require the legislature to modify the basic premise for Maine income taxation.

Petitioner raises an issue of "[w]hether the Respondent abused his discretion by invoking the provision of 36 M.R.S.A. § 5211(17)(D), where the statutory formula utilized by IPP fairly represents the company's business activities in Maine during the periods at issue." Petitioner avers "[t]he Assessor may not invoke subsection (17)(D) as it has in the instant case."

Respondent does not brief this argument. According to respondent, the only issue is the correct construction of the terms "all" and "everywhere" in the statute and "he does not need to, and does not, respond to IPP's second argument."

The Assessor's Decision on the Request for Reconsideration finds:

> The taxpayer's argument -- that the apportionment provisions have operated in this case in a manner so distortive as to require adjustment under section 5211(17) or constitutional requirements – is too undeveloped analytically and factually to carry its burden of proof. The taxpayer has not identified any particular foreign property, payroll or sales activity tied directly to the Maine timberland income. The taxpayer has not established the degree of purported distortion, or what legal authority argues for factor relief at such a level of misalignment of factors and income, or that inclusion of worldwide values in the apportionment denominators would be appropriate factor relief. Maine's taxation of all the income generated from sales of timber cut from its woodland properties in Maine does not on its face appear unfairly out of line with the values generating that income. I conclude that the taxpayer has not carried its burden for establishing error in the assessment. No adjustment to the assessment is warranted.

The petitioner's argument is curious. It is clear that it is not the respondent who raises the issue of the application of section 5211(17) but the taxpayer, the petitioner.

The Assessor determined that the petitioner had not provided sufficient evidence and law for him to invoke the section of Tax Code. It is difficult for this court to determine how such an analysis is an abuse of discretion if it is petitioner's argument that the Assessor should have utilized section 5211(17) in its favor. The court is satisfied that to do so would be so inconsistent with the fundamental principles of Maine income taxation of foreign corporations as to be an abuse of discretion.

The entry will be:

Decision of State Tax Assessor in the matter of Irving Pulp & Paper LTD Request for Reconsideration of Assessment of Corporate Income Tax and Interest for the taxable years ending 1995 through 1999. ID No. 98-0016823. MATS Case No. 308125S, Income Tax Division/Corporate Audit Unit dated July 25, 2002, is AFFIRMED.

Dated: September____/___, 2004

Donald H. Marden
Justice, Superior Court

Date Filed __8/28/02__ __Kennebec__ Docket No. __AP02-58__
County

Action __Petition for Review__
80C

# J. MARDEN

Irving Pulp & Paper, Ltd.     vs.    Anthony Neves, Dir. Maine Revenue Serv

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Douglas W. Clapp, Esq.<br>Philip S. Olsen, Esq.<br>10 St. James Avenue<br>Boston, MA 02116 | Stanley W. Piecuch, AAG<br>6 State House Station<br>Augusta, Maine 04333-0006 |

| Date of Entry | |
|---|---|
| 8/30/02 | Petition for Review, filed. s/Clapp, Esq. |
| 9/16/02 | Lettering entering appearance, filed. s/Piecuch, AAG |
| | Motion for Admission of Attorney to Practice Pro Hav Vice, filed. s/Clapp, Esq. |
| | Certification for Admission Pro Hav Vice of Philip S. Olsen, filed. s/Olsen, Esq. |
| 9/17/02 | Letter of No objection to admission of pro hac vice of Philip Olsen, filed. s/S. Piecuch, AAG |
| 9/19/02 | MOTION FOR ADMISSION PRO HAC VICE, Studstrup, J.<br>Motion granted and ordered Mr. Olsen is admitted pro hac vice.<br>Copies mailed to attys of record. |
| 9/24/02 | Certificate of Service as to Anthony Neves and Steven Rowe, AAG. with attached original return receipts, filed. (filed 9/20/02) |
| 9/25/02 | Joint Motion for Order Specifying Future Course of Proceedings with Memorandum of Law, filed. s/P. Olsen, Esq. and S. Piecuch, AAG |
| 9/26/02 | ORDER SPECIFYING FUTURE COURSE OF PROCEEDINGS, Marden, J.<br>Copies mailed to attys of record.<br>(discovery shall be completed 8 months after date of this order) |
| 5/23/03 | Joint Motion for Enlargement of Times with Proposed Order, filed. s/P. Olsen, Esq. and S. Piecuch, AAG. |
| 5/28/03 | ORDER, Marden, J. (dated 5/27/03)<br>Parties Joint Motion for Enlargement of Times is GRANTED.<br>(discovery shall be completed no later than July 25, 2003)<br>Copies mailed to attys of record. |
| 7/16/03 | Assessor's Agreed-Upon Motion for Enlargment, filed. s/Piecuch, AAG<br>Proposed Order, filed. |