STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-AP-10-24
JCN-CUM- 5/3/2012

|  |  |
|---|---|
| EAGLE RENTAL, INC., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| STATE TAX ASSESSOR, | ) |
| | ) |
| Respondent | ) |
| | ) |

DECISION AND JUDGMENT

This matter is before the Court on Petitioner's request, pursuant to M.R. Civ. P. 80C, for judicial review of the use tax assessed by the State Tax Assessor on four Cadillac Escalades (model years 2004, 2005, and two 2007) and a Caterpillar loader owned by Petitioner.[1] Petitioner maintains that the Escalades were at all pertinent times part of Petitioner's inventory for sale, and that the Caterpillar loader is not subject to tax because Petitioner acquired it from its sole shareholder, Daniel Bickford.

**Findings of Fact**

The parties stipulated to most, if not all, of the material facts. The Court incorporates herein the facts to which the parties stipulated without objection. To the extent that further findings of fact are required, the Court will make the findings in the context of the Court's analysis.

---

[1] Petitioner specifically seeks review of Respondent's June 14, 2010, Reconsideration Decision by which Respondent affirmed its November 29, 2009, assessment.

1

## Discussion

Title 36 M.R.S. § 151 (2010),[2] which governs the Court's review of Respondent's decisions, provides that the Court "shall conduct a de novo hearing, and make a de novo determination of the merits of the case." *Accord Foster v. State Tax Assessor*, 1998 ME 205, ¶ 7, 716 A.2d 1012. Petitioner has the burden to establish that the subject transactions are exempt from tax. 36 M.R.S. § 151; 36 M.R.S. § 1763 (2011); *accord SST & S, Inc. v. State Tax Assessor*, 675 A.2d 518, 521 (Me. 1996).

Maine use tax is imposed "on the storage, use or other consumption in in this State of tangible personal property or a service, the sale of which would be subject to tax" as a retail sale or certain casual sale. 36 M.R.S. § 1861 (2011). "For a use tax to apply to a transaction, there must be a use *and* a purchase by the taxpayer." *Apex Custom Lease Corp. v. State Tax Assessor*, 677 A.2d 530, 533 (Me. 1996) (citing *Trimount Coin Machine Co. v. Johnson*, 152 Me. 109, 112, 124 A.2d 753, 755 (1956)). In addition, "[w]hen tangible personal property purchased for resale is withdrawn from inventory by the retailer for the retailer's own use, use tax liability accrues at the date of withdrawal." *Id*.

### A. The Escalades

In this case, the issue is whether the Escalades were withdrawn from Petitioner's inventory and thus subject to tax as Respondent determined.[3] Respondent in part contends that because Petitioner's sole shareholder, Daniel Bickford, and his wife used the Cadillac Escalades for their personal use, the vehicles either were never part of Petitioner's inventory, or were

---

[2] Title 36 M.R.S. § 151 has been subsequently and substantively amended. *See* P.L. 2011, ch. 439, § 2 (effective July 1, 2012) (repealing and replacing 36 M.R.S. § 151 (2010)).

[3] Petitioner also argues that the presumptions within 36 M.R.S. § 1763 (2011) apply because a valid resale certificate was used in connection with the purchase of the Escalades. (Stip. Exhs. 3-5, 7.) The Court construes section 1763 according to its plain language, *see Brent Leasing Co. v. State Tax Assessor*, 2001 ME 90, ¶ 6, 773 A.2d 457, and concludes the statute's language regarding overcoming the presumption of a retail sale applies when a *seller* is seeking to avoid tax liability on a transaction, not a purchaser.

2

removed from the inventory almost immediately after Petitioner acquired the vehicles. Petitioner maintains that the Bickfords' use of the vehicles does not constitute a removal from Petitioner's inventory. Rather, Petitioner argues that the Bickfords' use is in accordance with the Maine dealer statute, which permits a motor vehicle dealer "no more than one dealer plate for the personal use of the manufacturer or dealer and one dealer plate for the personal use of the immediate family member of the dealer." 29-A M.R.S. § 1002(1)(B) (2011).

Although Respondent acknowledges that Petitioner is a licensed used car dealer, *see* 29-A M.R.S. §§ 851(11), 901 (2011), Respondent asserts that Petitioner did not maintain the Escalades as part of its inventory. In support of its argument, Respondent cites (1) the Bickfords' extensive personal use of the vehicles; (2) Petitioner's lack of meaningful, effective advertising of the Escalades for sale; (3) Petitioner's acquisition of the Escalades by trade; (4) Petitioner's limited motor vehicle sales generally; and (5) the absence of sales of luxury motor vehicles by Petitioner specifically.

Petitioner maintains that at all times the Escalades were for sale as part of Petitioner's inventory. According to Daniel Bickford, everything in the business is for sale.[4] Petitioner also points to the facts that (1) Petitioner always held a valid resale certificate for the Escalades, (2) Petitioner advertised the Escalades for sale, and (3) Petitioner's use of the vehicles is in accordance with State law regarding a dealer's use of vehicles with dealer plates.

29-A M.R.S. § 1002, which authorizes a dealer to attach dealer plates to two vehicles for his family's personal use, while relevant to whether Petitioner maintained the vehicles in its inventory, is not controlling. The mere fact that Maine law permits a motor vehicle dealer to

---

[4] At all relevant times, Petitioner's business consisted of the rental of light and heavy construction and home improvement equipment to commercial and residential customers, which equipment included wallpaper steamers, carpet cleaners, water trucks, dump trucks, excavators and boom lifts. Petitioner's business also included the sale of the equipment that it rents.

3

maintain two vehicles with dealer plates for personal use does not end the Court's inquiry. The Court is not convinced that the legislature intended to create a system by which a motor vehicle dealer can avoid tax on two vehicles used by the dealer's family without any realistic intent or attempt to sell the vehicles simply by attaching dealer plates to the vehicles. By authorizing a dealer to use two vehicles within the dealer's inventory for personal use, the legislature recognized that for legitimate reasons, including the opportunity for dealers to expose vehicles to the public, dealers have a desire to use vehicles in their inventory for their personal use. The dealer plate should not, however, be a shield to protect dealers from tax where the use is not consistent with the purposes of the statute. The Court must, therefore, examine the Bickfords' use and treatment of the vehicles to determine whether the vehicles can be fairly considered as among Petitioner's inventory.

Preliminarily, Petitioner did not regularly engage in the sale of luxury motor vehicles such as the Escalades. Petitioner sold very few passenger vehicles from 2004 through 2007, and none of those vehicles can be characterized as similar to the Escalades. In addition, Petitioner did not manage the Escalades in the same way it managed its other inventory. Petitioner's efforts to promote the Escalades for sale at times were essentially non-existent, and at other times were minimal at best. For instance, although Petitioner regularly advertised items of its inventory in the publication *Uncle Henry's*, Petitioner did not advertise the Escalades for sale in the publication. Petitioner also did not use traditional media sources to advertise the vehicles. Instead, Petitioner relied upon word of mouth between and among dealers to alert the public that the vehicles were for sale. Furthermore, Petitioner did not at all times post a visible used car disclosure form or other documentation on the vehicles to inform members of the public that the

4

vehicles were for sale, and did not locate the vehicles at its place of business such that the public would easily recognize that the vehicles were for sale.

The Bickfords' use of the vehicles and the manner in which Petitioner transferred the vehicles also suggest that the Escalades were not part of Petitioner's inventory. Between 2004 and 2010, Petitioner regularly owned two Escalades at the same time; the Bickfords used the vehicles for their own personal use. In the course of their use, the Bickfords drove the vehicles a significant number of miles. For instance, Petitioner owned a 2003 Escalade (not subject of this proceeding) which accumulated nearly 48,000 miles in approximately three years of use by the Bickfords; the 2005 Escalade accumulated 8,797 miles in six months; one 2007 Escalade accumulated 42,113 miles in about two years and eight months; and the other 2007 Escalade accumulated 28,050 miles in two years and two months.[5]

Petitioner also did not sell the vehicles at retail. Instead, Petitioner generally traded the vehicles to another dealer and acquired two other Escalades for the Bickfords' use.[6] While this fact alone is not dispositive, it is the predicable result of Petitioner's minimal efforts to sell the vehicles and is consistent with Petitioner's desire to maintain the vehicles for use by the Bickfords rather than for sale. Petitioner's argument that the vehicles did not sell at retail because of market conditions is unavailing. If in fact Petitioner had intended to sell the vehicles, but was unable to do so because of a softening market for luxury vehicles such as the Escalades, Petitioner presumably would not have obtained two more Escalades (i.e., the 2007 models) at the time of the trade of the 2004 and 2005 Escalades. Petitioner's acquisition of the 2007 Escalades is again consistent with Petitioner's intent to provide the Bickfords with the vehicles for their

[5] The mileage of the 2004 Escalade, which is part of this proceeding, at trade-in for the First 2007 Escalade is unknown.

[6] The 2004 Escalade was traded in for the first 2007 Escalade. The 2005 Escalade was purchased with a trade in; Petitioner later traded in the 2005 model for the second 2007 model. The second 2007 Escalade was sold in November 2010.

personal use rather than to attempt actively to sell the vehicles. In short, after consideration of the evidence, the Court concludes that Petitioner withdrew the Escalades from its inventory for lease or sale, thereby subjecting them to use tax. *See* 36 M.R.S. § 1861.

B.     The Caterpillar Loader

Daniel Bickford, Petitioner's sole shareholder, sold the loader to Petitioner on September 1, 2006. At the time of the sale, Mr. Bickford owned the loader in his personal capacity. The record establishes that the Mr. Bickford's sale of the loader is documented by a bill of sale and a promissory note pursuant to which Petitioner is obligated to Mr. Bickford for the loader.

Title 36 M.R.S. § 1764 (2011) provides, in relevant part:

[Sales or use] tax . . . must be levied upon all . . . casual sales involving the sale of trailers, truck campers, motor vehicles, special mobile equipment except farm tractors and lumber harvesting vehicles or loaders, watercraft or aircraft *except those sold for resale at retail sale to a corporation, partnership, limited liability partnership when the seller is the owner of a majority of the common stock of the corporation* or of the ownership interests in the partnership, limited liability company or limited liability partnership.

(Emphasis added). Because Mr. Bickford owned the loader at the time that he sold it to Petitioner, and because Mr. Bickford was Petitioner's sole shareholder at the time of the sale, the sale is exempt from tax pursuant to 36 M.R.S. § 1764.

**Conclusion**

Based on the foregoing analysis, the Court concludes that Maine State Use tax and interest is due on the four Escalades as set forth in the Assessor's November 29, 2009, Assessment. The Court further concludes that Petitioner is not obligated to pay the tax assessed on the Caterpillar loader. Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Judgment into the docket by reference.

Date: 5/3/12

_____
Justice, Maine Business & Consumer Court

6

Eagle Rental v. State Tax Assessor
BCD-AP-10-24


For Petitioner:
William Hewitt, Esq.
Pierce Atwood
254 Commercial Street
Portland ME  04101

For Respondent, State Tax Assessor:
Gregg D. Bernstein, AAG
Office of the Attorney General
6 State House Station
Augusta ME  04333-0006