## STATE of Maine

### v.

## Howard V. ALLEY.

Supreme Judicial Court of Maine.

March 12, 1970.

Douglas B. Chapman, County Atty., Ellsworth, Nicholas S. Strater, Asst. Atty. Gen., Augusta, as amicus curiae for plaintiff.

Smith, Elliott & Wood by George F. Wood, Saco, for defendant.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE, WEATHERBEE, and POMEROY, JJ.

MARDEN, Justice.

On appeal from the denial of a motion to dismiss an indictment charging appellant with unlawful possession of a certain narcotic drug.

The proscription appears in 22 M.R.S.A. § 2362, which reads:

"It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense or compound any narcotic drug, except as authorized in this chapter."

Section 2361, subsection 15 in pertinent part defined narcotic drugs as follows:

" 'Narcotic drugs' means coca leaves, opium, isonipecaine, cannabis * * *."

Section 2361, subsection 4 defined cannabis as follows:

" 'Cannabis' includes all parts of the plant Cannabis sativa L., whether growing or not; * * *; but shall not include the mature stalks of such plant, * * *."

The penalty for a first violation of the statute was a fine of not more than $1,000 and by imprisonment for not less than 2 nor more than 8 years, which placed the offense in the category of a felony.

The issue centers in an indictment which charged:

"That on or about the thirty first day of March, 1969, in the Town of Bucksport, County of Hancock, and State of Maine, Howard V Alley did unlawfully possess and have under his control a certain narcotic drug, to wit: Cannabis Sativa L, to wit: Marijuana; the said Howard V. Alley not being then and there a physician, dentist, podiatrist, apothecary, veterinarian, or any other person authorized under Chapter 557 of Title 22 M.R.S.A., to prescribe, sell, dispense, possess or control said narcotic drug, and also the said Howard V. Alley not being the owner or person having custody or control of any animal for which said narcotic drug has been prescribed, sold or dispensed by a veterinarian."

The accused seasonably filed a motion to dismiss the charge because it "does not state facts sufficient to constitute an offense against the State of Maine."

. A motion by defense counsel for a continuance for purposes of preparation of defense was denied and on the same day defendant entered a plea of guilty, and was sentenced to an indefinite term at the Men's Correctional Center, which sentence was permissible.

Of six points of appeal, three (a, c and d) go to the sufficiency of the indictment, one (e) to the alleged abuse of discretion by the trial court in denying the continuance and two (b and f) to the constitutionality of the statute.

■ The points challenging the constitutionality of the reference statute were neither briefed nor argued and are considered waived. A. E. Borden Co. v. Wurm, Me., 222 A.2d 150 [1], 152.

The points by which the sufficiency of the indictment are challenged are as follows:

"(a.) The Indictment fails to correctly negative exceptions as embodied within the enabling Statute.

"(c.) The Indictment fails to sufficiently charge the defendant of the offense intended making a preparation of defense futile and making protection against a subsequent prosecution illusory.

"(d.) The Indictment is defective in defining the offense under the Statute."

These points were paraphrased in briefing as follows:

1. That the alternative terms in describing the drug allegedly unlawful

identified substances which denote on the one hand a substance "which can be lawfully possessed in part," and on the other, a substance that has no meaning under the reference statute and "which has popular meanings that are both broader and narrower than the substance" proscribed.

2. That the charge is expressed in generic and slang terms which disregard statutory definitions.

Subsequent to the proceeding in the trial court and before the appeal was perfected, the statute under which appellant was charged, convicted by plea and sentenced was revised by P.L.1969 Chapter 443 effective October 1, 1969. This revision altered Section 2361 by repealing subsection 4 in which Cannabis was defined, removed Cannabis from subsection 15 in which it was classified as a narcotic drug, and added Chapter 558 (under same Title 22) which was designated as "the Act Controlling the Sale and Possession of Cannabis (Marijuana) and Peyote" consisting of §§ 2381–2386. In Section 2382, Cannabis was defined, using the same definition, pertinent here, as theretofore in Section 2361, subsection 4, except that marijuana was synonymized with Cannabis at the beginning of the definition as follows:

"§ 2382. Definitions

"1. Cannabis. 'Cannabis', sometimes called marijuana or marihuana, includes all parts of the plant Cannabis sativa L., whether growing or not; * * *."

In Section 2383 the penalty for illegal possesion of cannabis (marijuana) (first offense) is a fine of not more than $1,000 and by imprisonment for not more than 11 months, which places the offense in the category of a misdemeanor.

It is to be noted that these statutory changes,—repeal of one section (§ 2361, subsection 4), change in another section (subsection 15), re-enactment substantially of subsection 4, and addition of the new statutory treatment of Cannabis, were accomplished by the one legislative act (Chapter 443 P.L. 1969), the provisions of which were, of course, simultaneously effective. The unauthorized possession of Cannabis (marijuana) with its own identity, rather than as a narcotic, continued to be an offense, but a misdemeanor rather than a felony.

Appellant "does not assert that his conviction is abrogated by the new legislation" but urges that such change requires a remand of the case to the trial court for resentence according to the "new legislative definition of the crime's character and punishment." This contention is accepted for consideration as additional to the points of appeal, and as a threshold question.

How, if at all, is appellant's sentence affected by the changes in the statutes? It has been held in Thompson v. Edgar, Me., 259 A.2d 27 (November 21, 1969) that our general "savings" clause, 1 M.R.S.A. § 302 [1] applies to criminal proceedings and is as effective as if the clause were made an integral part of the new statute. See also United States v. Reisinger, 128 U.S. 398, 9 S.Ct. 99, 32 L.Ed. 480. With such savings clause "the offender may be tried and punished under the old law." 50 Am.Jur., Statutes § 572. Punishment is the penalty for the transgression of the law, Words & Phrases, and the sentence imposed by the trial court is a "punishment" or "penalty" within the terms of the savings clause.

Thompson, supra, did not require us to determine how the phrase "incurred before the repeal" is to be interpreted. It is nec-

1. "The repeal of an act or resolve passed after the 4th day of March, 1870 does not revive any statute in force before the act or resolve took effect. The repeal of an act does not affect any punishment, penalty or forfeiture incurred before the repeal takes effect, or any action, or proceeding pending at the time of the repeal, for an offense committed or for recovery of a penalty or forfeiture incurred under the act repealed. * * *."

essary to determine here whether the punishment was incurred at the time of the wrongful act (March 31, 1969) or when the ultimate liability for the act is imposed, conviction found, or judgment entered. The weight of authority upon this point is that:

> " 'Punishment, penalty or forfeiture' is 'incurred,' * * *, at the time the offense for which punishment is imposed is committed." Patrick v. Commissioner of Correction, 352 Mass. 666, 227 N.E.2d 348 [3, 4], 351 (1967).

See also Penn v. State, 13 Okl.Cr. 367, 164 P. 992, L.R.A.1917E, 668 (1917); People v. Harmon, 54 Cal.2d 9, 4 Cal.Rptr. 161, 168, 351 P.2d 329 [16], 336 (1960); State v. Johnson, 94 Ariz. 303, 383 P.2d 862 [5], 864 (1963); State v. Moore, 192 Or. 39, 233 P.2d 253 [5], 257 (1951); State v. Hardman, 16 Ind.App. 357, 45 N. E. 345 (1896); In re Schneck, 78 Kan. 207, 96 P. 43 (1908); Commonwealth v. Sherman, 9 Ky. 218, 4 S.W. 790, 792 (1887); United States v. Taylor, 123 F. Supp. 920 [1], 922 (D.C. N.Y. 1954) aff'd. 227 F.2d 958 (2 CCA) applying general savings clause in 1 U.S.C.A. § 109. Contra, People v. Oliver, 1 N.Y.2d 152, 151 N. Y.S.2d 367, 372, 134 N.E.2d 197 [5], 201 (N. Y.1956).

Under our savings clause, appellant's penalty was incurred on or about the 31st day of March, 1969, and appellant is exposed to the punishment provided at that time.

### Denial of continuance

Action upon motions for continuance rest within the sound judicial discretion of the presiding Justice, State v. Hume, 146 Me. 129, 134, 78 A.2d 496, and upon which he must act on a case by case basis. Here, failing in the motion for continuance, the appellant entered a plea of guilty. It was neither recorded nor urged in brief that the denial of the motion prejudiced his election to stand trial or enter the plea ultimately made. He was not "forced" to trial for he did not elect to undergo trial. The record reflects an intention on the part of the appellant to stand or fall on the legal issues incidental to the indictment. Prejudice to appellant is not presumed, it must be shown. State v. Rastrom, Me., 261 A.2d 245, (Opinion filed January 27, 1970).

### Sufficiency of Indictment, description of Narcotics

Appellant emphasizes alleged infirmities in the use of "cannabis sativa L" and "marijuana" as effectively specifying the narcotic drug prohibited by the statute.

It is pointed out by appellant, and conceded by the State, that cannabis sativa L. is the botanical name of a plant, portions of which, excluding the mature stock, have narcotic quality. This distinction is recognized in Section 2361, supra. The narcotic quality exists in a resin (cannabin, cannabinon) and a volatile oil (cannabinol) within the leaves and flowering tops (cannabis) of the plant. See The Merck Index of Chemicals and Drugs (1952) and Van Norstrand's Scientific Encyc. (1968), Hemp. The euphoriant elements are released by heat (the act of smoking the dried portions, as in a cigarette). Appellant urges that the possession of the plant is not per se possession of a narcotic substance.

Appellant analogizes the use of "cannabis sativa L" with the use of "liquor" in State v. Bellmore, 144 Me. 231, 67 A.2d 531. The proscription in *Bellmore* was against intoxicating liquor and the Court held that pleading "liquor" was pleading a generic term which included both intoxicating and non-intoxicating liquid and was insufficient to charge the possession of intoxicating liquor. The proposed analogy fails, for while there can be liquor without intoxicating quality, there can be no cannabis sativa L without cannabis, which latter by statutory definition is a narcotic drug. The botanical term for the plant in which a narcotic element is inherent, was used to specify the type of prohibited narcotics which appellant allegedly possessed.

It is further urged that possession of marijuana is not proscribed by the statute and is but a generic or slang term which has no standing in criminal pleading.

It is true that the term "marijuana" did not appear within the statutory definition of narcotic drugs under which appellant was charged, and while once the word may have referred generically to a type of wild tobacco or hemp (Webster's Third New International Dictionary) or in a slang sense blended with a personal name, Maria Juana or Mary Jane, (Webster's New World Dictionary, College Edition, 1959) it has long since established an etymologically reputable identity in source books, both general and scientific, where it is defined as a drug "obtained from the top leaves and flowers of the Indian-hemp plant, *Cannabis sativa*, * * *" 14 Encyc. Brit., 1962 Ed., "The leaves and flowering tops of *Cannabis sativa*, * * *" Dorland's Illus. Med.Dict. 24th Ed. "The Spanish name for the dried leaves and flowering tops of the hemp plant, *Cannabis sativa*, * * *" 8 McGraw-Hill Encyc. of Science and Technology, 1966 Ed., "Drug obtained from the flowering tops of the hemp plant *Cannabis sativa*", Columbia Encyc. (1963 Ed.). By scientific definition the "leaves and flowering tops" are both cannabis and marijuana, and cannabis by statutory definition is a narcotic drug.

These definitions and the synonymity of cannabis and marijuana have been recognized in law. See State v. Navaro, 83 Utah 6, 26 P.2d 955 [1–3], 2d. col. 958 (1933); State v. Romero, 74 N.M. 642, 397 P.2d 26 [1], 29 (1964); and Martinez v. People, 160 Colo. 333, 417 P.2d 485 [1], 486 (1966, judicial notice). The meaning of the term "marijuana" is well and commonly known. Navaro, supra, [4] 26 P.2d 959, and State v. Jackson, 239 A.2d 215 [6], 217 (Del.Super.1968). It is more specific than cannabis sativa L. and more informative to a person of "common understanding" in March of 1969.

It cannot be seriously contended that the use of the common word "marijuana" as specifying the narcotic drug allegedly possessed by the appellant did not adequately inform him of the accusation. The charge, in this respect, met all requirements of Rule 7 M.R.Crim.Proc., State v. Child, 158 Me. 242, 182 A.2d 675, 17 A.L.R.3d 1275, and State v. Charette, 159 Me. 124, 188 A. 2d 898.

*Negativing the Exceptions in the Statute*

It has been broadly stated that if an exception appears in the enacting clause of a statute, it has to be averred in an indictment founded on the statute by means of language negativing the exception,—that the accused was not within the exception. 41 Am.Jur., 2d Indictments and Information § 98, and State v. Godfrey, 24 Me. 232.

This rule expresses the "description" theory of pleading recognized in State v. Webber, 125 Me. 319, 322, 133 A. 738 where the Court said:

"(W)here a statute defining an offense contains an exception * * * in the enacting clause which is so incorporated with the language describing and defining the offense that the ingredients of the offense cannot be accurately and clearly described if the exception is omitted, an indictment founded on the statute must allege enough to show that the accused is not within the exception."

Courts which follow this "description" theory also generally hold that "an exception which happens to be located outside the enacting section" is not essentially descriptive of the offense. 41 Am.Jur.2d supra § 99.

"(W)here the language of the statute defining the offense is so entirely separable from the exception that the ingredients constituting the offense may be accurately and clearly defined without any reference to the exception, the pleader may safely omit any such reference, since the matter contained in the exception is a matter of defense, which must be established by the accused." 41 Am.Jur.2d, Indictments and Informations § 98.

Such holding expresses the "location" theory of pleading recognized in State v. Gurney, 37 Me. 149, 155 where the Court said:

"But when the exception or proviso is in a subsequent enacting clause, the case provided for in the enacting clause may be fully stated without negativing the subsequent exception or proviso. * * * (I)t is for the party for whom matter of excuse is furnished by the statute, to bring it forward in his defense."

Guerney was followed in State v. Boyington, 56 Me. 512, 514 and State v. Skolfield, 86 Me. 149, 152, 29 A. 922, where the rule was even more clearly reiterated, and most recently in Toussaint v. State, Me., 262 A.2d 123, (Opinion filed February 19, 1970).

 Here in § 2362 was a general prohibition against the possession of narcotic drugs. Classes of persons exempted from the prohibition were establihed in other parts of the chapter. It was appellant's responsibility by pleading to bring himself within an excepted class. The procedural desirability of limiting negative pleading had been adopted in our Rule 7[2] M.R. Crim.Proc., which rule is:

"(I)ntended * * * to eliminate the necessity of negativing statutory exceptions, unless the exception is so inseparable a part of the definition of the offense that it cannot be accurately described if the exception is omitted." Rule 7, Reporter's Notes, Page 66 and Discussion § 7.9, Maine Practice, Glassman.

Pleading to negative the status of the accused as within any class of persons freed from the prohibition of the statute was not necessary.

Appeal denied.

2. Rule 7 M.R.Crim.Proc. The Indictment and the Information.
"(c) *Nature and Contents.* * * * The indictment * * * shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."