1998 ME 188

**Margo REAGAN, et al.**[1]

v.

**RACAL MORTGAGE, INC., et al.**[2]

Supreme Judicial Court of Maine.

Argued June 9, 1998.

Decided July 27, 1998.

---

1. The other plaintiffs are John Reagan, Robin and Stephen St. Jean, Gregg and Kathleen Bullock, and Bruce Goulette. The Reagans were dismissed from the action. Summary judgment was granted against Bullocks on their claim, *St. Jean v. Racal Mortgage, Inc.,* 952 F.Supp. 22, 26 (D.Me.1997), and the Bullocks did not appeal.

Only the St. Jeans and Goulette remain as appellees.

2. The other defendants are Chemical Residential Mortgage Corporation and GE Capital Mortgage Services, Inc. and are collectively referred to as "Racal."

John G. Connor (orally), Portland, for Bruce Goulette.

Kurt Olafsen, (orally), Olafsen & Butterfield, Portland, for Robin & Stephen St. Jean.

Richard L. O'Meara (orally), Murray, Plumb & Murray, Portland, for defendants.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and SAUFLEY, JJ.

WATHEN, Chief Justice.

[¶ 1]  Following defendants' appeal to the First Circuit Court of Appeals from summary judgments entered in the United States District Court for the District of Maine (Carter, J.), the First Circuit, pursuant to 4 M.R.S.A. § 57 (1989) and M.R.Civ.P. 76B, certified to us the following questions of Maine law:

(1) For purposes of Me.Rev.Stat.Ann. tit. 1, § 302, does a violation of Maine Consumer Credit Code section 9–405(4) constitute a "penalty" incurred at the moment the violation occurred?

(2) If the answer to Question 1 is no, do the 1994 amendments to the Maine Consumer Credit Code have retroactive effect under the common law of Maine?

(3) If the answer to Question 1 is yes, or the answer to Question 2 is no, can an error of law constitute a "bona fide error" for purposes of Maine Consumer Credit Code section 9–405(7)?

[¶ 2]  The undisputed facts may be summarized as follows: In 1992, Racal Mortgage, Inc. (hereinafter referred to as "Racal") entered into certain mortgage loan transactions with plaintiffs Bruce Goulette and Robin and Stephen St. Jean (hereinafter individually referred to by name or collectively referred to as "debtors") for the purpose of financing the purchase of debtors' respective residences. The loans were closed in Racal's name, as lender, but were "table-funded" by Chemical Residential Mortgage Corporation, i.e., Chemical provided the funds that Racal lent to the debtors. Racal immediately assigned the loans to Chemical. Thereafter, Chemical serviced the loans and collected the amounts due from the debtors.

[¶ 3]  At the time of the closings in 1992, Racal was registered with the Maine Bureau of Consumer Credit Protection as a credit services organization, 9–A M.R.S.A. § 10–102(1) (1997 & Supp.1997), but not as a licensed supervised lender, 9–A M.R.S.A. § 1–

301(39) (Supp.1997). Pursuant to the Maine Consumer Credit Code, only supervised financial organizations or licensed lenders may engage in the business of making supervised loans, 9–A M.R.S.A. § 2–301 (1997), and the loans made by Racal to the debtors were "supervised loans" as defined by the Code. 9–A M.R.S.A. § 1–301(40) (Supp.1997).

[¶ 4] In 1995, Goulette and the St. Jeans each brought a separate action for sanctions pursuant to 9–A M.R.S.A. § 9–405(4) against Racal for making unauthorized supervised loans. The actions were consolidated in the United States District Court, and summary judgment was granted in favor of the debtors. *St. Jean v. Racal Mortgage, Inc.*, 952 F.Supp. 22, 31 (D.Me.1997). Racal appealed to the First Circuit Court of Appeals, which concluded that Racal violated the Code by making supervised loans without being licensed to do so. *Reagan*, 135 F.3d at 41. The unresolved issue concerns the applicable sanction provision—the law in effect at the time the loans were made in 1992 or the current law in effect at the time the debtors filed their complaints. To answer these questions, the First Circuit certified the three questions of law. *Reagan v. Racal Mortgage, Inc.*, 135 F.3d 37, 46 (1st Cir. 1998).

[¶ 5] Former section 9–405(4), in effect in 1992, provides in relevant part as follows: "If a creditor has violated the provisions of this article applying to authority to make supervised loans, section 9–201, *the debtor is not obligated to pay the loan finance charge.*" P.L.1987, ch. 396, § 12 (emphasis added). Current section 9–405(4), amended effective July 14, 1994, provides for a lesser penalty, described in relevant part as follows: "If a creditor has violated the provisions of this article applying to authority to make supervised loans, section 9–201, *the debtor is not obligated to pay any application fee, prepaid finance charge or closing cost, nor the loan finance charge owed for the first 12 months of the loan.*" P.L.1993, ch. 496, § 4 (emphasis added). Section 9–405(7) of the 1992 law provides an affirmative defense, however, in the following terms:

> If the creditor establishes by a preponderance of evidence that a violation is uninten-

tional *or* the result of a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such violation or error, no liability is imposed under subsections 1, 2 *and 4,* the validity of the transaction is not affected, and no liability is imposed under subsection 3, except for refusal to make a refund.

P.L.1987, ch. 396, § 12 (emphasis added). Current section 9–405(7), amended effective July 14, 1994, deletes reference to subsection 4, which is the subsection at issue in this case, thereby eliminating the defense for such violations, and also amends the language "unintentional *or* the result of a bona fide error" to "unintentional *and* the result of a bona fide error." P.L.1993, ch. 496, § 4 (emphasis added).

### I. General Savings Statute

[¶ 6] The debtors argue that the general savings statute, 1 M.R.S.A. § 302 (1989), applies to this case and that therefore the harsher sanction provided by the 1992 law applies. We agree. Section 302 provides in relevant part as follows:

> The repeal or *amendment* of an Act or ordinance *does not affect* any punishment, *penalty* or forfeiture *incurred before the* repeal or *amendment takes effect,* or any action or proceeding pending at the time of the repeal or amendment, for an offense committed or for recovery of a penalty or forfeiture incurred under the Act or ordinance repealed or amended.

*Id.* (emphasis added).

[¶ 7] The test pursuant to section 302 is two-pronged: (1) there must be a punishment, penalty, or forfeiture; and (2) the punishment, penalty, or forfeiture must have been incurred before the amendment. When interpreting a statute, we first look at the plain meaning of the statutory language, seeking to give effect to legislative intent, and consider the particular language in the context of the whole statutory scheme. *Maine Green Party v. Secretary of State,* 1997 ME 175, ¶ 6, 698 A.2d 516, 519. We construe the language to reach a harmonious result and to avoid absurd, illogical, or inconsistent results. *Thibeault v. Larson,* 666 A.2d 112, 114 (Me.1995). If an ambiguity is

found in the statute, we look to the legislative history of the statute to ascertain the legislative intent. *See Maine Green Party v. Secretary of State*, 1997 ME 175, ¶¶ 6, 7, 698 A.2d 516, 519. Further, we note in particular that "section 302 provides a rule of construction only, and the rule is controlling 'absent clear and unequivocal language to the contrary.'" *Riley v. Bath Iron Works Corp.*, 639 A.2d 626, 627 (Me.1994) (Citation omitted).

■ [¶ 8] The terms "punishment, penalty or forfeiture" are not defined in section 302, or in related provisions. In the absence of a legislative definition, "the term must be given a meaning consistent with the overall statutory context and must be construed in the light of the subject matter, the purpose of the statute and the consequences of particular interpretation." *Town of Madison v. Town of Norridgewock*, 544 A.2d 317, 319 (Me.1988) (citation omitted). We have interpreted "penalty" on other occasions in connection with section 302. *See generally Town of Ogunquit v. McGarva*, 570 A.2d 320 (Me.1990) (a $200 per day fine, a civil penalty, for land use violations was a penalty pursuant to section 302, but an award of attorneys fees was not a penalty); *State v. Alley*, 263 A.2d 66 (Me.1970) (a criminal sentence for unlawful possession of a certain narcotic drug was a penalty pursuant to section 302); *Thompson v. Edgar*, 259 A.2d 27, 29 (Me.1969) (the loss of a driver's license is not a penalty pursuant to section 302).

■ [¶ 9] While no case is directly on point, we find *Town of Ogunquit v. McGarva*, 570 A.2d 320 most comparable to the sanctions involved in this case. In *McGarva*, the defendant argued that the provisions of a local ordinance imposing penalties for land use violations were preempted by a state statute providing for lesser penalties. We

did not reach that issue, however, because we determined that the "$200 per day fine provision was clearly a 'penalty ... incurred' by McGarva when he began violating the ordinance" prior to enactment of the state statute. Applying section 302, we held that the allegedly preemptive statute did not affect the penalty already "incurred" by McGarva. *Id.* at 321.

[¶ 10] The sanctions for land use violations are comparable to the sanctions of the Consumer Credit Code. Contrary to Racal's argument, *Thompson v. Edgar*, 259 A.2d 27, 30 (Me.1969), is readily distinguishable. In *Thompson*, we concluded that the suspension of a driver's license was not a "punishment" under section 302 in part because the loss of license was not intended to punish the operator, but to protect the public by suspending the right to drive. In the present case, the sanction for violating the Consumer Credit Code does not suspend any privilege that Racal currently enjoys. Although the Consumer Credit Code is designed to protect the public,[3] it accomplishes this goal by deterring creditors from transacting business in violation of the Code.

[¶ 11] The Maine Consumer Credit Code is based on the Uniform Consumer Credit Code, 7A U.L.A. 1 (1985). Article 9 of the Maine Consumer Credit Code was adopted to "reorganize and recodif[y] provisions from 4 articles of the Maine Consumer Credit Code that deal with first-lien mortgage lending by nonbanks into a new article IX." L.D. 1560, Statement of Fact (113th Legis.1987). Section 9–405 of Article 9, entitled "Effect of violations on rights of parties," is derived in general from Article 5, entitled "Remedies and Penalties," and in particular from section 5–201(2), also entitled "Effect of violations on rights of parties."[4] Section 5–201(2) pro-

---

**3.** One of the purposes of the Maine Consumer Credit Code is "[t]o protect consumer buyers, lessees, and borrowers against unfair practices by some suppliers of consumer credit, having due regard for the interests of legitimate and scrupulous creditors." 9–A M.R.S.A. § 1–102(2)(D) (1997). On the other hand, another purpose is "[t]o permit and encourage the development of fair and economically sound consumer credit practices." 9–A M.R.S.A. § 1–102(2)(E) (1997).

**4.** Prior to Article 9 being adopted, section 2–301 provided for the general authority to make supervised loans. Section 5–201(2) provided in part as follows: "If a creditor has violated the provisions of this Act applying to authority to make supervised loans, section 2–301, the debtor is not obligated to pay the loan finance charge." P.L. 1985, ch. 763, pt. A, § 46. Section 5–201(2) was amended in 1993, similar to section 9–405, to read in part as follows:

vides a similar remedy to that in section 9–405 and also is similar to section 5.201 of the Uniform Consumer Credit Code (1974 Act), 7A U.L.A. 181 (1985). 9–A M.R.S.A. § 5–201 Historical and Statutory Notes (1997). The comment to section 5.201 in the uniform law provides in part:

1. Rights that are accompanied by inadequate remedies or no remedy at all and limitations on agreements and practices that do not provide for sufficient penalties or for any penalty at all are generally ineffective to accomplish the desired result.... *In order to protect rights created and to deter provisions of agreements and practices proscribed by legislation, suitable remedies and penalties must exist.* Since an aggrieved party is one of the persons best able to enforce violations of rights and limitations, this section sets forth a right of action in the consumer in the event of violation by the creditor of each section of this Act that does not include its own provision for infraction and better to deter such practices, even of some that do ...

2.... The *penalty* is designed not only *to provide a deterrent* to potential violators but also an *incentive to a consumer* to bring an action when a violation has occurred.

Uniform Consumer Credit Code § 5.201, comment ¶¶ 1, 2 (1974 Act), 7A U.L.A. 183 (1985) (emphasis added). In amending section 9–405 in 1994, the Legislature stated its intention "to bring the *penalty* more in line with the severity of the violation, while retaining sufficient *deterrence* to nonlicensed lending." L.D. 1649, Statement of Fact (116th Legislature 1993) (emphasis added).

[¶ 12] Thus, the complete legislative history of section 9–405 describes the sanction provided therein as a "penalty" and suggests that the purpose of the sanction is to both protect the consumer and penalize the violator for purposes of deterrence. Moreover, the Legislature intended, by making the sanctions payable to the consumer, to create an incentive for the consumer to bring an action to enforce the statute. Based on this legislative history, and our analyses in *McGarva* and *Thompson*, we hold that the sanction for violating section 9–405(4) of the Maine Consumer Credit Code is a penalty for purposes of section 302.

[¶ 13] Moreover, we hold that the penalty was incurred at the time of the wrongful act—the making of a supervised loan by a unlicensed lender. *See Town of Ogunquit v. McGarva,* 570 A.2d 320 (Me.1990) (a civil penalty for land use violation was incurred when McGarva began violating the ordinance); *State v. Alley,* 263 A.2d 66 (Me.1970) (in criminal proceeding, the punishment incurred is that in effect at the time of the wrongful act). We reject Racal's attempt to distinguish *McGarva* on the basis that, in that case, the penalty was automatic and no affirmative defense was provided. The fact that defendants in criminal cases have the right to raise defenses and challenge the sufficiency of the evidence does not alter the fact that the punishment incurred is that in effect at the time of the wrongful act.

[¶ 14] We conclude that the sanction for violating the Consumer Credit Code is a penalty for purposes of 1 M.R.S.A. § 302 and that the penalty incurred is that which was in effect when Racal violated the Code by closing the mortgage loan transactions in 1992. Accordingly, we answer the first question in the affirmative and do not answer the second question.

[¶ 15] The third question does not specify any particular error of law, and thus presents unresolved issues of fact. We are unable to provide a definitive answer.

---

"2. If a creditor has violated the provisions of this Act applying to authority to make supervised loans, section 2–301, the debtor is not obligated to pay any application fee, prepaid finance charge or closing cost, nor the loan finance charge owed for the first 12 months of the loan....
P.L.1993, ch. 496, § 1.